## McKEE v. THORNTON.

No. 9650—Opinion Filed Aug 31, 1920.

(Syllabus by the Court.)

**1. Trial—Admission of Evidence—Motion to Strike.**

A party to a suit cannot speculate on the testimony to be introduced by the adverse party and after the introduction of such testimony without objection, move to strike on the ground that such testimony is incompetent.

**2. Vendor and Purchaser—Notice—Duty of Inquiry.**

One who purchases land with knowledge of such facts as would put a prudent man on inquiry, which, if prosecuted with ordinary diligence would lead to actual notice of rights claimed adversely to his vendor, is chargeable with the duty of making such inquiry and with the actual notice he would have received if such inquiry had been made.

**3. Same—Recital in Deed as to Lease—Effect.**

Where T. purchased land from U., and his deed thereto contains a recital excepting an oil lease to M., he takes the land burdened with the lease, and a presumption of law arises, in the absence of proof to the con-

trary, that the lease was taken into consideration in determining the purchase price of the land.

**4. Oil and Gas—Lease—Commencement of Operations—Right of Vendee of Land.**

The time when operations under an oil and gas lease shall commence is a proper subject of agreement between the parties, and in the absence of circumstances requiring equitable intervention, one who purchases lands burdened with a valid lease has no right to expect or require the lessee to begin operation or development prior to the time provided in ·such lease.

Error from District Court, Okmulgee County; Chas. G. Watts, Assigned Judge.

Action by George W. Thornton against W. R. McKee to quiet title to a certain tract of land in Okmulgee county. From a judgment for plaintiff, defendant appeals. Reversed with directions.

West, Sherman, Davidson & Moore, for plaintiff in error.

Merwine & Newhouse, for defendant in error.

BAILEY, J. Suit was filed on January 6, 1916, by George W. Thornton, referred to herein as plaintiff, against W. R. McKee, referred to herein as defendant, to quiet title to a certain tract of land in Okmulgee county, Oklahoma, upon which defendant had a certain oil mining lease. The cause was tried to the court without a jury.

The evidence shows that on January 18, 1905, defendant and his father-in-law, James G. Unger, the then owner of the land, entered into the following agreement:

"An agreement made and entered into this 18th day of January, 1905, between James G. Unger of Enid, Oklahoma Territory, lessor, and William R. McKee of Enid, Oklahoma Territory, lessor.

"Witnesseth: That the lessor in consideration of one dollar, the receipt of which is hereby acknowledged, or for other valuable considerations, does hereby demise and grant unto the lessee, his heirs or assigns, all the oil, gas and all other metals or minerals in and under the following described tract of land and also the said tract of land for the purpose and with the exclusive right of operating thereon for the said oil, gas and other minerals or metals together with the right of way, the right to lay pipe over and to use water from said premises and also the right to remove at any time all property placed thereon by the lessee, which tract is situated in the Creek Nation, Indian Territory, and is described as follows, to wit:

"The north half of the southwest quarter and the southwest quarter of the southwest

quarter of section three (3) township fifteen (15) north, range twelve (12) east of the Indian Base and Meridian, containing 120 acres according to the U. S. Government survey thereof.

"To Have and to Hold, the same unto the lessee, his heirs and assigns for 99 years from the date hereof and as much longer as oil, gas or other minerals or metals is found in paying quantities thereon, yielding and paying to the lessor the one-tenth part of all the oil produced and saved from the premises delivered free of expense into tanks or pipe lines to the lessor's credit and should any well or mine produce gas or other minerals or metals in sufficient quantities for marketing the lessor should be paid at the rate of one dollar per year for such well or mine as long as gas or other metals are sold therefrom, payment is to be made in hand or by deposit in the First National Bank to the credit of the lessor.

"It is agreed that the lessee or his assigns is to prospect for oil, gas or other minerals or metals within twenty years from the date of this agreement, otherwise this agreement is to be null and void. It is agreed and understood that all the terms and conditions of this agreement between the parties hereto shall extend to and apply to their respective heirs, executors, administrators and assigns."

Plaintiff purchasd the land from Unger on February 3, 1905. The conveyance to him was by general warranty deed which excepts "one oil and mineral lease to defendant, William R. McKee."

From a judgment for the plaintiff based on a general finding in his favor, the defendant appealed. The material error alleged and argued by the defendant is "that the court erred in decreeing defendant's oil lease to be null and void.' It is urged by the plaintiff that the lease constitutes a mere option, for the reason that it is without adequate consideration and the lessee was bound to develop within a reasonable time or pay a fixed rental for delay, and that therefore the lessor, before entry by the lessee for the purpose of executing the lease, may revoke it.

This suit was begun approximately eleven years after the lease was made and plaintiff had gone into possession of the land. The evidence shows that the defendant was the son-in-law of James G. Unger, deceased, the lessor and the grantor of the land. The defendant testified that, in addition to the one dollar, the money consideration amounted to $600 and was in the nature of a settlement for money owed him by his father-in-law. He also testified that at the time he took the lease the land had an oil lease value of five or six dollars per acre and that it has had an oil value ever since; that he could have sold it a year prior to the suit at a profit;

that at the time he took the lease there was an oil well within three and one-half miles of the land.

At the close of this testimony of the defendant, which had been admitted without objection, and after the witness had been excused on the ground that the testimony of the defendant as to the transaction had with his deceased father-in-law was incompetent and inadmissible under section 5039, Rev. Laws 1910. For a timely objection to be valid it would be necessary that the plaintiff come within some provision of this statute. Phinnie v. Atkinson, 72 Oklahoma, 177 Pac. 111. But plaintiff, by his failure to object at the time of the introduction of the testimony, waived his right to object thereafter. A party to a suit cannot speculate on the testimony to be introduced by the adverse party and after the introduction of such testimony without objection move to strike on the ground that such testimony is incompetent. Brownell v. Moorehead, 65 Oklahoma, 165 Pac. 408; Ardmore Oil & Milling Co. v. Robinson, 29 Okla. 79, 116 Pac. 191.

The lease, though specifically excepted in the deed to Thornton, was not placed of record until a few days after plaintiff purchased the land; but the recital in the deed was sufficient to have put the plaintiff on notice as to every provision of the lease. It is well settled that one who purchases land with knowledge of such facts as would put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the actual notice he would have received. Section 2926, Rev. Laws 1910; Thomas v. Huddleston, 65 Oklahoma, 164 Pac. 106; Orr v. Reed, 50 Okla. 580, 151 Pac. 200; Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29.

There is some testimony to the effect that plaintiff was offered the land at two prices, one with the lease excepted and one with it released, and that he purchased at the lower price, leaving the land burdened with the lease. Whether these facts are established as incidents to the conveyance of the land does not materially affect the issue. There is a presumption of law that one purchasing land burdened with a lease takes that fact into consideration in the payment of the purchase price. Plaintiff being charged with actual notice of the lease and of all of its conditions, and the lease being specifically excepted in the deed to Thornton, he is presumed, in the absence of proof to the contrary, to have contracted in reference thereto

He took the land subject to the lease with which it was incumbered and is not in a position to raise the question of the consideration passing between the lessor and the lessee. Williamson v. Davis, 74 Oklahoma, 177 Pac. 567; U. S. Bond & Mortgage Co. v. Keahey, 53 Okla. 176, 155 Pac. 557, L. R. A. 1917C, 829; Jones v. Perkins, 43 Okla. 734, 144 Pac. 183.

Plaintiff having purchased the land subject to the lease of the defendant, and this lease having been taken into consideration in the determination of the purchase price, it only remains to be determined whether this lease made by the grantor of the land to the defendant for an adequate consideration is so unconscionable in its terms as to be set aside by a court of equity. It is admitted by the plaintiff that the grantor might have made a gift to his son-in-law, the defendant, and might have reserved all the mineral rights and that the recital of such reservation in the deed would estop the plaintiff from the action herein to quiet title, against the defendant. How the defendant can be placed in a less favorable position as to the determination of his rights when these rights are dependent on an oil lease executed in good faith by the grantor and excepted in the grant to the plaintiff, in the absence of any showing of fraud, duress, or undue influence, is not clear, and while the lease is to be construed most strongly against the lessee and most liberally in favor of the lessor, and in the interest of development and against delay and unproduction (New State Oil Co. v. Dunn, 75 Okla. 141, 182 Pac. 514), parties are not to be precluded from contracting in good faith. There is no evidence in the record that the development of the plaintiff's land for oil is being delayed due to the fact that the land is incumbered by defendant's lease. For aught that appears in the testimony, development is no nearer the plaintiff's land now than it was at the time the lease was made and the plaintiff purchased the land. This case is therefore free, so far as the record shows, from those facts which have persuaded courts of equity to declare a forfeiture for nonproduction.

The period within which the lessee must prospect or surrender the lease, though long delayed, is definitely fixed, and while the agreement is an unusual one, the time limit does not appear to be ambiguous, and such time is a proper subject for contract between the lessor and the lessee. In Ringle v. Quigg, 74 Kan. 581, 87 Pac. 724, it is held that the time when operations, under a lease, shall commence is a proper subject of agreement between the parties, and, in the absence of imposition, fraud, or mistake, the provisions of the contract should be upheld. The lease was for a term of 20 years and as much longer as oil or gas should be found in paying quantities, and it was agreed that the lessee should begin operations on the lease within five years. The court stated:

"We do not understand that a written instrument is void, merely because one of the parties expects the other to perform the conditions thereof on his part at once, when by the express stipulations of the agreement such performance may be delayed five years. * * *

"It is claimed that the receipt of royalty is the essence of the contract, and the stipulations therein do not require the lessees to begin or continue operations. The lessees are thereby able to defeat the real object of the lease, and for that reason the instrument is void, in the language of the brief of plaintiff in error: 'It cannot be said that this lease was valid for a single minute, either before or after the assignment thereof.' * * *

"It may be conceded that obtaining royalty is the essence of the contract, and also that under these provisions the lessees might continue the lease during its full term of 20 years without doing anything in the way of explorations for gas or oil. These considerations, however, do not make the lease void nor unreasonable. There are no facts alleged in the petition which indicate that these provisions are in any way injurious to the interest of the lessors. Whether or not a contract is unconscionable, unreasonable, or improvident, may depend upon something more than its mere language. The subject-matter of the agreement, its condition, surroundings, and the relation of the parties thereto, may become material matters for consideration. The land described in the lease, in the absence of allegations to the contrary, may have been assumed by the district court to be, when the lease was executed, situated remote from oil or gas producing territory. When this lease was executed, the idea of valuable deposits of gas or oil being under the leased premises may have been regarded as somewhat visionary. The lessors may have been disposed to grant very liberal terms to persons willing to make the necessary expenditure to ascertain whether such deposits existed or not. On the other hand, the lessees may have been willing to undertake such explorations if inducements sufficiently liberal, as to time and otherwise, could be secured. The terms and conditions of such a contract, including the time during which a lease should continue in force before the commencement of the work of exploration, are proper matters of agreement which the parties have the right to fix to suit themselves. In the absence of fraud, imposition, or mistake, neither of which is suggested here, parties should be left to make their own contracts, and, when freely and voluntarily made, should be held to the conditions thereof, even though it should turn out in the light

of subsequent developments that their rights were valued too lightly. In the case of Rose v. Lanyon, etc., 68 Kan. 126, 74 Pac. 625, Justice Burch used language which is quite pertinent here. It reads: 'Courts have no right to declare that, whatever the parties may think, operations for sinking a well must begin at once under an oil or gas lease. If this court had done so prior to the time plaintiffs desired to contract they would have rebelled without any doubt, with the utmost indignation against the decision as an infringement of their liberty to contract with reference to their land and the minerals beneath its surface as they pleased. In so doing, they would have been justified. If plaintiffs should desire to contract for an immediate exploration, they must have that right; and, if they should desire to give an oil or gas company five years in which to sink a well, upon a consideration satisfactory to themselves, and as the result of negotiations free from imposition and fraud, they must have that right. But, having deliberately made a contract of the latter description, they have no right to call upon a court to declare that it is of the other kind merely because generally it might seem to be better for farmers not to incumber their lands with mineral leases, giving a long time for exploration, or because generally such leases do contemplate that forfeiture shall follow a failure to explore at once.' "

The case of Ringle v. Quigg, supra, from which we have thus quoted at length, is cited, with approval, in Gas Co. v. Neosho, 75 Kan. 335, 87 Pac. 750, wherein it is said:

"There is no standard form for an oil and gas 'lease.' * * * Each instrument must be interpreted in the light of its own peculiar provisions."

The case is again cited with approval in Bloom v. Rugh, 98 Kan. 589, 593, 160 Pac. 1135, 1136, wherein it is said:

"The cases decided by this court * * * have been determined upon their individual merits."

We are of the opinion that the lease entered into between Unger and his son-in-law, McKee, the defendant herein, was such a lease as could be entered into between these parties, and that the grantee of the land, George W. Thornton, the plaintiff herein, having taken the deed subject to the lease, is not, under the facts shown in the record, entitled to a decree setting aside this lease and quieting title as to the rights of the defendant.

We express no opinion as to the rights and obligations of the parties after the expiration of the 20-year period mentioned in the lease.

For the reasons stated, the cause is reversed and remanded, with directions that the trial court enter judgment in accordance with the views herein expressed.

HARRISON, KANE, JOHNSON, and McNEILL, JJ., concur. RAINEY, C. J., concurs in the conclusion.